UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



FIELD STAFF EMPLOYEES UNION,

    Plaintiff,

    v.

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO, COUNCIL 93,

    Defendant

CIVIL ACTION NO.
04-10577-PBS

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF REASONS WHY MOTION SHOULD BE ALLOWED

### I.     Motion

The plaintiff Field Staff Employees Union ("FSEU") moves for summary judgment in its favor pursuant to FRCP 56 and Local Rule 56.1. The material facts as to which the plaintiff submits there is no genuine dispute are contained in the accompanying Rule 56.1 Statement of Material Facts as to Which There is no Genuine Issue to be Tried, and the grounds for this motion are set forth in the following Statement of Reasons Why Motion Should Be Allowed.

### II.     Statement of Reasons Why Motion Should Be Allowed

### A.     Applicable Summary Judgment Standard

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995).

"The words 'genuine issue of material fact' have been judicially refined and defined." Connell v. Bank of Boston, 924 F.2d 1169, 1171 (1st Cir. 1991). Thus, "[I]n order to determine what facts are material, [a court] must look to the controlling substantive law." Adams v. United States EPA, 38 F.3d 43, 53 (1st Cir. 1994). See Connell v. Bank of Boston, supra, 924 F.2d at 1171 ("As to materiality, the substantive law will identify which facts are material."); Kennedy v. Josephthal & Co., 814 F.2d 798, 804 (1st Cir. 1987) ("Materiality is defined by the substantive law governing the case.").

Consequently, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  See also Local 1545, United Mine Workers v. Inland Steel Coal Co., 876 F.2d 1288, 1293 (7th Cir. 1989) ("[T]he mere presence of a factual dispute does not preclude summary judgment unless the disputed fact is outcome determinative under the governing law.") (Citations omitted).

As to genuineness, a genuine issue is one "supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." Shaw's Supermarkets, Inc. v. UFCW, Local 791, 268 F. Supp. 2d 115, 120 (D.R.I. 2003), quoting from Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp., 317 F.3d 16, 19 (1st Cir. 2003).

**B.    The Applicable Substantive Law**

Labor unions and employers are lawfully permitted to enter into collective bargaining agreements ("CBAs"), specialized contracts that typically regulate the terms and conditions of employment of the employees subject to their terms.[1]  See, e.g., NLRB v. Goodless Brothers Electric Co., 285 F.3d 102, 104 (1st Cir. 2002).

Typically, parties to CBAs agree in advance to resolve all disputes arising thereunder by non-judicial means, usually by final and binding arbitration. See, e.g., United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 35 (1987) ("Collective-bargaining agreements commonly provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances.").[2]  Indeed, Congress has expressly encouraged them to do so.  See 29 U.S.C. § 173(d) ("Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.").

Congress has afforded the federal courts a concrete but limited role in disputes that involve the arbitration terms of collective bargaining agreements. Section 301 of the Labor Management Relations Act [29 U.S.C. § 185],[3] has

---

[1]    See, e.g., Vollmar v. CSX Transp., Inc., 705 F. Supp. 1154, 1174 (E.D.Va.1989) ("Collective bargaining agreements are simply highly specialized contracts.")

[2]    See also Posadas de Puerto Rico Associates, Inc. v. Union de Trabajadores de la Industria Gastronomica de P.R., Local 610, 670 F. Supp. 58, 59 (D.P.R. 1987) (observing that "[m]ost collective bargaining agreements contain an arbitration clause . . . .").

[3]    Entitled "Suits by and against labor organizations," section 185(a) provides in relevant part that "[s]uits for violation of contracts between an employer and a labor organization

been construed in this respect as empowering district courts to, among other things, hear suits concerning the enforceability of labor arbitration awards. See, e.g., Hines v. Anchor Motor Freight, 424 U.S. 554, 562 (1976) (arbitration provisions in collective bargaining agreements "are among those which are to be enforced under § 301.").[4]

The role of the courts in § 301 actions involving arbitration awards is limited, however, owing to the rule that "[c]ourts are not to usurp those functions which collective-bargaining contracts have properly entrusted to the arbitration tribunal." Hines v. Anchor Motor Freight, Inc., supra, 424 U.S. at 562-3.[5] For instance, when a court is asked, in a timely-filed action,[6] to vacate an arbitration award, its role is narrowly focused:

representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

[4]     Cases brought in this judicial circuit under §301 to either vacate or confirm an arbitration award include Medical Center v. SEIU, Local 285, 260 F.3d 16 (1st Cir. 2001); Posadas De Puerto Rico Associates, Inc. v. Asociacion De Empleados De Casino De Puerto Rico, 821 F.2d 60 (1st Cir. 1987); Courier-Citizen Co. v. Boston Electrotypers Union No. 11, etc., 702 F.2d 273, 275 (1st Cir. 1983); Derwin v. General Dynamics Corp., 719 F.2d 484 (1st Cir. 1983); Joint Board of Cloak, Skirt & Dressmakers Union, etc. v. Senco, Inc., 310 F. Supp. 539 (D. Mass. 1970).

[5]     Those "functions" consist primarily of fact-finding and construing collective bargaining agreements. See, e.g., Boston Medical Center v. SEIU, Local 285, 260 F.3d 16 (1st Cir. 2001)(courts "accept the facts as the arbitrator found them.") and El Dorado Technical Services, Inc. v. Union General de Trabajadores de Puerto Rico, 961 F.2d 317, 319 (1st Cir. 1992) ("In labor arbitration, matters of contract interpretation are typically for the arbitrator, not for a reviewing court.")

[6]     Federal courts look to the law of the forum state to determine how long a party has to file suit to vacate an arbitration award. In Massachusetts, that period is set by statute at 30 days. See G.L. c. 150C, §§ 10, 11(b). See, e.g., Painters District Council No. 35 v. Coating Systems, Inc., 164 L.R.R.M. 2240 (D.Mass. 1997) ("[I]n Massachusetts, applications to vacate an arbitration award under the Labor Management Relations Act, . . . must be filed within thirty days of the award's issuance.").

The consequences of not filing a timely action to vacate an award are extreme: See, e.g., Derwin, supra, 719 F.2d at 489 ("[a] party who fails to initiate an action to vacate or modify an award within the 30-day time limit specified in sections 11 and 12 is barred from asserting those claims as defenses to a later action to confirm."); International Association of Bridge, Structural & Ornamental Iron Workers, Local 501 v. Burtman Iron Works, Inc., 928 F. Supp.

> judicial review of an arbitration decision is extremely
> narrow and extraordinarily deferential.  See Maine
> Central Railroad Co. v. Brotherhood of Maintenance of
> Way Employees, 873 F.2d 425, 428 (1st Cir. 1989)
> (noting that judicial review of arbitration decisions "is
> among the narrowest known in the law").  A court
> cannot vacate an arbitral award as long as the
> arbitrator is even arguably construing the contract and
> acting within the scope of his authority.

Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 20 (1st

Cir. 2001), citing United Paperworkers International Union v. Misco, Inc., 484

U.S. 29, 38 (1986).[7]

The rationale for empowering courts in this concrete but limited manner

derives from the federal policy in favor of allowing unions and employers to

resolve their disputes with finality by whatever method they have chosen to do

so.  The Supreme Court has explained in this respect that this policy "can be

effectuated only if the means chosen by the parties for settlement of their

differences under a collective bargaining agreement is given full play."  Hines v.

Anchor Motor Freight, supra, 424 U.S. at 563.[8]

At the same time, however, judicial intervention may be required to

guarantee the very finality on which that chosen method of dispute resolution

---

83 (D. Mass. 1996) ("Failure to bring a vacatur action within the limitation period extinguishes the right of a party to plead defenses and counterclaims in a confirmation action that could have served to support the vacatur action."), citing Derwin, supra, 719 F.2d at 489.

[7]    See also JCI Communications, Inc. v. IBEW, Local 103, 324 F.3d 42, 50 (1st Cir. 2003) ("An arbitrator's award must be affirmed so long as the arbitrator is "even arguably construing or applying the contract.," quoting from Misco, Inc., supra, 484 U.S. at 38).

[8]    See also O'Brien v. Town of Agawam, 350 F.3d 279, 286 n. 13 (1st Cir. 2003)(observing that the "principal rationale" for the "presumption favoring arbitration in collective bargaining agreements . . . is that arbitrators are in a better position than courts to interpret the terms of a CBA")(quoting from Wright v. Universal Maritime Service Corp., 525 U.S. 70, 78 (1998)); Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 24 (1st Cir. 2003)("[I]t is not arbitration per se that federal policy favors; rather, it is the settlement of disputes by the means mutually agreed upon by the parties themselves -- whatever those means may be.");

ultimately depends for its credibility.  See General Drivers, W. & H. v. Riss & Co., 372 U.S. 517, 519 (1963) ("[I]f the award . . . is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301.").  See also Sear v. Cadillac Auto. Co., 501 F. Supp. 1350 , 1355 (D. Mass. 1980) ("[F]inality is generally accorded to an arbitrator's decision because this congressional policy 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play."

Regardless of the context in which a district court's authority under § 301 is invoked,  "the substantive law to apply . . . is federal law, which the courts must fashion from the policy of our national labor laws."  United Paperworkers International Union v. Misco, Inc., supra, 484 U.S. at 39.  See also Derwin v. General Dynamics Corp., supra, 719 F.2d at 492.

In Derwin v. General Dynamics Corp., supra, the First Circuit fashioned such a substantive rule to govern the very legal issue presented by this case, i.e., the circumstances in which a federal court can, by the exercise of its section 301 enforcement powers, order the *prospective* application of an arbitration award.  There, the Court first noted the general rule, to wit that courts are generally *not* to resolve the merits of disputes arising under collective bargaining agreements, even when asked to do so in the context of enforcing [rather than vacating] an award:

> [W]here the parties have agreed to arbitrate disputes over the meaning of their collective bargaining agreements, established labor policy significantly restricts the role of the federal courts. . . . In recognition of this limited role, the courts have often declined to rule that an arbitral award is binding in a later, factually similar context, reasoning that

> the precedential effect to be accorded a past award is a matter for the arbitrator. . . . The courts, moreover, have carefully scrutinized suits to "enforce" past awards where the facts suggest that the nominal enforcement proceeding is, in truth, an attempt to extend the award to a new, previously unresolved dispute. . . .

Derwin, supra, 719 F.2d at 491.

But then it recognized that if a particular, discrete contract dispute has already been "resolved" once by an arbitrator, in a final and binding award, the parties' commitment to arbitration would not require that they endlessly arbitrate the same dispute each time it comes up again. Rather, the Court fashioned a narrow "exception", defining when a court *can* properly compel a party to comply with an earlier arbitration award:

> Only where an arbitral award is both *clearly intended to have a prospective effect* and there is *no colorable basis for denying the applicability of the existing award to a dispute at hand*, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure. . . .[U]nless 'it is beyond argument that there is *no material factual difference* between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion,' the case must go to fresh arbitration rather than to the court for judicial enforcement.

Id. The Court was careful to note that this exception would not result in courts doing that which they are generally precluded from doing, that is, construing collective bargaining agreements, explaining in this respect that "[t]o apply this test, the court need not interpret the collective bargaining agreement or the award, but need scrutinize the latter only to the extent necessary to determine if any colorable argument can be made that it would not apply to the case before it." Boston Shipping Association, supra, 659 F.2d at 4.

Other circuits have adopted a substantially similar test for determining when a federal court can "enforce" a prior award in the context of a new dispute.[9] Indeed, the case from which the <u>Derwin</u> test was derived, <u>Oil, Chemical and Atomic Workers, Local No. 4-16000 v. Ethyl Corp.</u>, 644 F.2d 1044 (5th Cir. 1981), involved, like the instant award, an award that ordered the employer "to desist from "like" violations in the future." <u>Id</u>. at 1051.

Compelling a party to fully comply with an arbitration award in these defined circumstances does not interfere with the parties' commitment to arbitration; rather, it is a necessary adjunct of it, without which the promise of finality would be purely illusory. <u>See, e.g.</u>, <u>Boston Shipping Association</u>, <u>supra</u>, 659 F.2d at 5 (observing that ordering the prospective application of arbitration award serves "the parties' need for a meaningful arbitral remedy"); <u>Consolidation Coal Co. v. UMW, Dist. 12</u>, 213 F.3d 404, 406 (7th Cir. 2000) (writing that courts "will enforce an arbitrator's injunction"); <u>Krieter v. Lufthansa German Airlines, Inc.</u>, 558 F.2d 966, 967 (9th Cir. 1977) (observing that if arbitrator's findings were not final and binding, "arbitration would become a meaningless form of settlement."); <u>Southern Seas Navigation, Ltd. v.</u>

---

[9]    <u>See, e.g.</u>, <u>Oil, Chemical & Atomic Workers International Union v. Ethyl Corp.</u>, 644 F.2d 1044, 1050 (5th Cir. 1981) ("conduct which is substantially similar to the actions condemned in the prior arbitration award must be prohibited in order to properly enforce that award. Conduct which merely differs in form from the actions which were the subject of the prior arbitration award cannot serve as an excuse for instituting new arbitration proceedings. On the other hand, actions by the company which differ materially from the previously condemned conduct and thus, are not substantially similar to that conduct, cannot constitute a "like" violation of the previous arbitration award. Therefore, if [the employer's] current actions differ materially from the previously banned conduct and, thus, do not constitute a substantially similar or "like" violation then the legality of such new conduct must be determined first by an arbitrator."); Local 1545, <u>United Mine Workers v. Inland Steel Coal Co.</u>, 876 F.2d 1288, 1293 (7th Cir. 1989)(instructing that "there are several factors that a court must consider in deciding whether to enforce an arbitration award prospectively, rather than leaving the issue itself to arbitration," including whether there is evidence that the arbitrator intended the award to apply prospectively and whether the facts of the new dispute are "substantially identical" to those in the award the party seeks to have applied).

<u>Petroleos Mexicanos of Mexico City</u>, 606 F. Supp. 692, 694 (S.D.N.Y 1985) (observing that a court's inability to enforce arbitration award "would render meaningless the arbitrators' power to grant . . . equitable relief").[10]

### C.    The Instant Award Qualifies Under Derwin For Prospective Application

The FSEU does not have to submit to arbitration the new dispute concerning Fila's involuntary transfer, because that dispute presents the same contract issues that were definitively answered in the Couhig arbitration award and is squarely governed by the arbitrator's prospective remedy. Under <u>Derwin</u>, the FSEU is thus entitled to have the Couhig award enforced and judicially applied to the Fila dispute.

First, it is clear from the express text of the Couhig award that the arbitrator intended for his ruling to operate prospectively. He did not merely order the employer, Council 93, to remedy the particular contractual violation he found to have occurred, by rescinding Couhig's involuntary transfer; he specifically ordered it to "cease and desist from effecting transfers without first soliciting volunteers" and ordered that "it [Council 93] *will* implement transfers based on inverse seniority." And if he was not clear enough the first time, he said it again, ordering that Council 93 "shall cease and desist from *any similar violations* of the agreement".

By definition, a "cease and desist order" operates prospectively. <u>See Puerto Rico Maritime Shipping Authority v. Federal Maritime Commission</u>, 75 F.3d 63, 65 (1st Cir. 1997 (characterizing cease and desist orders as

---

[10]    Indeed, all one needs to do is to consider the negative consequences that would follow if the courts had no means of securing compliance with *their* substantive adjudication of parties' rights and responsibilities.

"prospective relief"); <u>Black's Law Dictionary</u> (5th ed.) at 202 ("Cease and desist order: an order . . . prohibiting a person or business from continuing a particular course of conduct . . . ."). Similarly, an instruction that someone "will" or "shall" do something is inherently prospective. The instant award leaves a reader with no doubt that the arbitrator intended his award to apply to any future involuntary transfers that the employer sought to initiate.

Although the merits of the arbitrator's award are not open to challenge in this proceeding, FSEU nonetheless notes that the arbitrator's cease and desist order was well within the scope of his remedial power. <u>See</u>, <u>e.g.</u>, *Elkouri & Elkouri, How Arbitration Works* (Reuben, 6th ed.) at 1197-99 (collecting cases in which arbitrators have ordered cease and desist orders and other injunctive-type prospective relief, and noting that "it is clear that under federal law the courts can enforce injunctive-type orders issued by arbitrator . . .").

There are also no material factual differences between the Fila involuntary transfer and the Couhig involuntary transfer that would possibly justify a new arbitrator reaching a different conclusion. The "material" facts of the Couhig award were a) unit member Couhig was involuntarily transferred from one assignment to another; b) before doing so, the employer did not solicit volunteers for the assignment into which she was placed; and c) Couhig was not the least senior member of the bargaining unit.

What makes those particular facts material is the arbitrator's construction of the CBA in the Couhig case, a construction that must be accepted as correct in this proceeding. First, he expressly construed the agreement as requiring that before *any* involuntary transfer can been effected, the employer must first solicit volunteers for the assignment in question.

Second, he expressly construed the agreement to mean that if there are no volunteers, the employer *may* require a unit member to move into the assignment but that it must select based on inverse seniority.[11]

With respect to the parties' new dispute over Fila's involuntary transfer, the summary judgment record shows it to be undisputed that a) the employer involuntarily transferred unit member Fila; b) before doing so, the employer did *not* first solicit volunteers for the position it placed her in, and c) Fila was in any event *not* the least senior member of the bargaining unit. Since, according to the arbitrator in Couhig, those are the very facts that matter in the context of involuntary transfers, there is no colorable basis for denying the applicability of the Couhig award to the Fila dispute.

A comparison of the facts of this case with those of <u>Derwin</u> also demonstrates FSEU's entitlement to relief under the standard announced in that case.[12] Unlike <u>Derwin</u>, the undisputed material facts show that there is presently a concrete dispute between the union and the employer, that is, Fila's involuntary transfer and the extent to which that personnel action directly contravenes the prospective portions of the Couhig award. <u>Compare Derwin, supra,</u> (confirmation deemed unwarranted in part because application for

---

[11]     The Union notes that for at least two reasons, the *correctness* of those conclusions is not open to challenge. The first is that the employer did not bring a timely action to vacate the ward, and thus there is no vehicle for even undertaking the limited, highly circumscribed review that is applied in such cases. The second is that under that standard of review, courts are simply not permitted to second-guess arbitrators in their construction of the agreement. <u>See</u>, <u>e.g.</u>, <u>Exxon Corp. v. Esso Workers' Union</u>, 118 F.3d 841, 844 (1st Cir. 1997) ("As long as the arbitrator is arguably interpreting the CBA, a court cannot second-guess his decision. . . . Through the medium of the CBA, the employer and the union bargain for the arbitrator's interpretation, and a federal court must respect that bargain."). The conclusions reached by the arbitrator in Couhig are relevant insofar as they provide the measure of the employer's substantive obligations in regard to involuntary transfers.

[12]     It will be recalled in this respect that the First Circuit, after announcing the relevant test, ultimately found that the test was not satisfied in the circumstances of that case and that accordingly the union was not entitled to prospective application of the arbitration award.

confirmation did "not seek resolution of a concrete dispute between the parties" and "[t]he union does not allege that the company has repudiated or violated the award in some particular calling for judicial resolution.").

Other relevant factors show that this is a "new" dispute for purposes of the Derwin rule. Chronologically, the dispute over Fila's involuntary transfer arose after the issuance of the Couhig award. In terms of those affected, Fila obviously is not Couhig, and the position into which Fila was transferred was not the same one into which Couhig was transferred. Unlike the case in Derwin, FSEU is not merely asking the Court to put its imprimatur on the Couhig award in a vacuum; rather, the request is made in the context of a new, concrete dispute, albeit one implicating the same rights and responsibilities concerning involuntary transfers. Compare Derwin, supra, 719 F.2d at 491.

The FSEU also is seeking far more than a "ministerial" confirmation of the Couhig award. Compare Derwin, supra, 719 F.2d at 492-93. It asks the Court to substantively cloak that award – and in particular, its injunctive remedy - with the finality for which the parties bargained by requiring Council 93 to adhere to it in this materially identical dispute. The relief sought thus would end the new dispute over Fila's involuntary transfer and, one would hope, prevent other such disputes from recurring unless and until the parties adjust their respective rights and responsibilities concerning this topic through the mechanism of collective bargaining.

### III.    Conclusion

For the reasons set out above, the FSEU respectfully requests that the court enter summary judgment in its favor and that it order the relief identified in prayers (a) – (e) of the Prayer for Relief portion of its complaint.

Respectfully submitted,

For the Plaintiff,

By its attorneys,

Alan J. McDonald, BBO #330960
James F. Lamond, BB0 # 544817
McDonald & Associates
Cordaville Office Center
153 Cordaville Road, Suite 210
Southborough, MA  01775
(508) 485 6600

Dated:  August 11, 2004

### CERTIFICATE OF SERVICE

I, James F. Lamond, hereby certify that I have this day by first-class mail, postage prepaid, served a copy of the foregoing "Plaintiff's Motion For Summary Judgment and Memorandum of Reasons Why Motion Should Be Allowed" upon John M. Carey, Esq., Hollender & Carey, 44 School Street, Suite 415, Boston, Massachusetts  02108.

Dated:  August 11, 2004

James F. Lamond, BBO #544817

13