UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIELD STAFF EMPLOYEES UNION,          )<br>                                                              )<br>          Plaintiff,                              )<br>     v.                                              )<br>                                                              )<br>AMERICAN FEDERATION OF STATE,   )<br>COUNTY AND MUNICIPAL EMPLOYEES, )<br>AFL-CIO, COUNCIL 93,                  )<br>                                                              )<br>          Defendant.                         ) | CIVIL ACTION<br>NO.  04-10577-PBS |

**REPORT AND RECOMMENDATION ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

November 17, 2004

DEIN, U.S.M.J.

## I.  <u>INTRODUCTION</u>

The plaintiff Field Staff Employees Union (the "Union") represents a unit of employees of the defendant American Federal of State, County and Municipal Employees, AFL-CIO, Council 93 (for present purposes the "Employer").  In 2004, the Employer involuntarily transferred an employee, Martha Fila ("Fila"), to a new assignment.  The Union has challenged the involuntary transfer as being in violation of a 2002 arbitrator's decision relating to an employee, Patricia Couhig, wherein the arbitrator set out the procedure to be followed under the Collective Bargaining Agreement ("CBA") in the case of involuntary transfers (the "Couhig Award").

The Union contends that, in light of the Couhig Award, it does not have to arbitrate Fila's grievance.  Instead, it has brought an action to confirm and enforce the

Couhig Award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, claiming that the Employer is bound to follow the Couhig Award in connection with Fila's reassignment. The Employer contends that the issue whether the Couhig Award is applicable to the Fila situation is for an arbitrator to decide. The matter is presently before the court on cross-motions for summary judgment.

     The court concludes that the instant situation is governed by the First Circuit decisions in <u>Boston Shipping Assoc., Inc. v. Int'l Longshoremen's Assoc. (AFL-CIO)</u>, 659 F.2d 1 (1st Cir. 1981), and <u>Derwin v. Gen. Dynamics Corp.</u>, 719 F.2d 484 (1st Cir. 1983). As the <u>Derwin</u> court held, where (as here) "an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, . . . a court [will] order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure." <u>Id.</u> at 491. Consequently, and for the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the plaintiff Union's Motion for Summary Judgment (Docket # 7) be ALLOWED and that the defendant Employer's Cross-Motion for Summary Judgment (Docket # 10) be DENIED.

## II. STATEMENT OF FACTS[1]

The Union represents employees of the Employer, and the parties are signatories to a CBA which has been in existence, and remained unchanged, at all relevant times. (SF ¶¶ 1-3). The CBA provides, among other things, that the arbitrator's decision as to disputes submitted to arbitration is final and binding. (Id. ¶ 4).

In 2002, the Employer involuntarily transferred Patricia Couhig from one assignment to another. (Id. ¶ 5). The Union filed a grievance, which was submitted to arbitration, and the arbitration was heard by Tim Buckalew. (Id. ¶ 6). Hotly contested evidentiary hearings were held on May 28, September 19, and October 3, 2003. (Id. ¶ 7; Couhig Award at 1, 22). The stipulated issue for the arbitrator to decide was "Did the Employer violate the collective bargaining agreement by the reassignment of Patricia Couhig in 2002?  If so, what shall be the remedy?" (SF ¶ 7). Post-hearing briefs were filed and the arbitrator issued his "Opinion and Award" on January 8, 2004. (See id. ¶¶ 7, 8; Couhig Award at 1).

The arbitrator concluded that the Employer had breached the CBA in connection with Couhig's involuntary transfer. (SF ¶ 9). In so doing, the arbitrator noted the high emotions which had apparently dominated the proceedings, and found that the parties "seem to wish the dispute could have been resolved by trial by combat" but that "further

---

[1] The facts are derived from "Plaintiff's Rule 56.1 Statement of Material Facts as to Which There is No Genuine Issue to be Tried" (Docket # 8) (cited as "SF ¶ ___"), and from the Arbitrator's Opinion and Award dated January 8, 2004 relating to Patricia Couhig, a copy of which is attached to the Complaint (the "Couhig Award").

violence to the witnesses and the parties is not necessary." (Couhig Award at 22). Rather, he based his decision "on the evidence not in dispute, and the clear terms of the contract[.]" (Id.).

Specifically, the arbitrator concluded that the Employer had violated the CBA as follows:

> [T]he failure of Council 93 to demonstrate Couhig's reassignment was necessary ..., and to solicit volunteers before selecting a bargaining unit member for involuntary transfer, and to apply inverse seniority in effecting the reassignment, violated the parties' collective bargaining agreement.

(SF ¶ 10). To remedy the situation, he directed that:

> [C]louhig shall be returned to her former position and Council 93 will cease and desist from effecting transfers without first soliciting volunteers, and it will implement transfers based on inverse seniority.

(Id. ¶ 11). Thus, the "award" issued was as follows:

> For the reasons stated above, Council 93 violated the contract when it transferred Patricia Couhig without the necessity for such transfer, when it failed to solicit volunteers for the position and when it failed to effect the transfer based on inverse seniority. She shall be returned to her former position and Council 93 shall cease and desist from any similar violations of the agreement.

(Id. ¶ 12). The Employer did not seek to vacate or modify the award. (Id. ¶ 13).

Following its receipt of the Couhig Award, the Employer notified another employee, Fila, that she was being involuntarily transferred to a new assignment. (Id. ¶ 14). In so doing, the Employer did not seek volunteers, nor did it implement the transfer on the basis of inverse seniority. (Id. ¶¶ 15-16). The Employer has not identified

any facts distinguishing Fila's situation from Couhig's, other than to assert that "Fila is a different employee seeking to contest her reassignment in 2004, while the facts on which the prior award is based pertained to Couhig in 2002." Defendant's Opposition and Cross-Motion for Summary Judgment (Docket # 10) ("Employer Mem.") at 7.

### III.  ANALYSIS

The principles favoring arbitration and deferring to an arbitrator's decision interpreting a CBA are well-established and beyond challenge.  Thus, it goes without saying "that where the parties have agreed to arbitrate disputes over the meaning of their collective bargaining agreements, established labor policy significantly restricts the role of the federal courts." Derwin v. Gen. Dynamics Corp., 719 F.2d 484, 491 (1st Cir. 1983), and cases cited.  "In recognition of this limited role, the courts have often declined to rule that an arbitral award is binding in a later, factually similar context, reasoning that the precedential effect to be accorded a past award is a matter for the arbitrator." Id. (citing Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273, 280 (1st Cir. 1983); Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico, 583 F.2d 1184, 1186-87 (1st Cir. 1978)).  "The courts, moreover, have carefully scrutinized suits to 'enforce' past awards where the facts suggest that the nominal enforcement proceeding is, in truth, an attempt to extend the award to a new, previously unresolved dispute." Id.

Despite these clear principles, the First Circuit has recognized that in very limited circumstances, where there is no basis for relitigating a matter before another arbitrator, courts will apply a prior award to a new grievance without requiring that an arbitrator

review the situation anew.  In <u>Boston Shipping Assoc., Inc. v. Int'l Longshoremen's Assoc. (AFL-CIO)</u>, 659 F.2d 1 (1st Cir. 1981), and again in <u>Derwin</u>, the Court established the following rule: "where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand," that is, where "it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion," then "a court [will] order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure."  <u>Derwin</u>, 719 F.2d at 491 (quoting <u>Boston Shipping</u>, 659 F.2d at 4).  These conditions exist in the instant case, and further arbitration is not warranted.

The Employer does not dispute that by its terms the arbitration award was "clearly intended to have a prospective effect."  Not only did the arbitrator order the Employer to "cease and desist from effecting transfers without first soliciting volunteers," and to "cease and desist from any similar violations of the agreement," but he also ordered that the Employer "will implement transfers on inverse seniority."  (SF ¶¶ 10-12).  It is clear that the arbitrator intended that his interpretation of the CBA's involuntary transfer requirements would be applied to subsequent transfers.  See <u>Puerto Rico Mar. Shipping Auth. v. Fed. Mar. Comm.</u>, 75 F.3d 63, 65 (1st Cir. 1996) (characterizing cease and desist orders as prospective relief).

Furthermore, the Employer does not seriously contend that there are factual distinctions which preclude the application of the Couhig Award to Fila. (See Employer Mem. at 7). All that the Employer has raised before this court is that different grievants are involved. Id.[2] Thus, the instant case presents the precise situation where the Derwin court concluded that further arbitration was not appropriate, and the Union's motion for summary judgment should, therefore, be allowed.

In order to evade the clear holding of Derwin, the Employer notes that "Derwin was decided without regard to the Supreme Court's decision" in W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber Workers, 461 U.S. 757, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983). (See Employer Mem. at 5). In W.R. Grace, the Supreme Court held that because "the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator," it was up to an arbitrator, "based on his interpretation of the bargaining agreement's provisions defining the arbitrator's jurisdiction," to decide whether he was bound by an earlier arbitrator's decision. W.R. Grace, 461 U.S. at 766, 103 S. Ct. at 2183. The Employer's argument that W.R. Grace somehow invalidates Derwin is without merit.

---

[2] In view of the arbitrator's assessment of the level of animosity between the Union and Employer in the Couhig matter, it appears that the Employer was simply continuing the battle by promptly transferring Fila in violation of the Couhig Award. Given the clear language of Derwin, it was incumbent upon the Employer to specify at least some factual difference if it wanted to proceed to arbitration with Fila. The mere substitution of a different grievant, in and of itself, cannot be sufficient to create a new controversy warranting review by an arbitrator, or there would be virtually no situation where the rule established in Derwin and Boston Shipping would apply. See Boston Shipping, 659 F.2d at 5 (mere fact that new contract with same term was in effect did not preclude court from confirming prior award without a new arbitration).

As an initial matter, <u>Derwin</u> was decided several months after <u>W.R. Grace</u>, and the <u>Derwin</u> court thus had the benefit of the Supreme Court decision. Moreover, the <u>Derwin</u> court clearly recognized the above-quoted principle of law on which <u>W.R. Grace</u> was based. See <u>Derwin</u>, 719 F.2d at 491 (recognizing that courts often conclude "that the precedential effect to be accorded a past award is a matter for the arbitrator"). In any event, the First Circuit's decision denying arbitration in the case of a prospective award being applied to a factually identical situation is premised on the fact that no contract interpretation is involved in such a situation. As the court held in <u>Boston Shipping</u>, while discussing the decision of <u>Oil, Chemical and Atomic Workers, Local No. 4-16000 v. Ethyl Corp.</u>, 644 F.2d 1044, 1051 (5th Cir. 1981):[3]

> To accommodate the competing goals of national labor policy of fostering arbitration while preserving the integrity of past awards, the [<u>Oil Workers</u>] court devised a test of "material factual identity": if it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion, the new dispute is a "like" dispute subject to enforcement under the prior award. ... To apply this test, <u>the court need not interpret the collective bargaining agreement or the award</u>, but need scrutinize the latter only to the extent necessary to determine if any colorable argument can be made that it would not apply to the case before it. Under this approach, if there is an arguable material difference, the

---

[3] The <u>Boston Shipping</u> court described the <u>Oil Workers</u> case as one where "the union faced a recidivist employer who continued to place supervisory personnel in hourly rated jobs, despite an arbitration award declaring a particular instance of that practice to be a violation of the collective bargaining agreement and ordering the employer to desist from 'like' violations in the future." 659 F.2d at 4. The First Circuit in <u>Boston Shipping</u> found the <u>Oil Workers</u> analysis to be "instructive in the similar situation presented here." <u>Id.</u>

>dispute is for the arbitrator; if not, the parties are bound by their prior arbitration.

Boston Shipping, 659 F.2d at 4 (emphasis added). Since in the instant case the Employer has not raised any colorable argument as to why the Couhig Award should not apply to Fila, there is no contract interpretation needed and there is no reason to send the mater back to arbitration even under W.R. Grace.

The Employer further has attempted to distinguish Boston Shipping and Derwin on the grounds that they do "not establish a substantive legal rule applicable to this case." (Employer Mem. at 5). While admittedly the holdings of these cases have not gathered a wide following elsewhere, they do remain the law of this Circuit.[4] This court finds the holdings of Derwin and Boston Shipping to be clear and applicable to the instant dispute.

In connection with Boston Shipping, the Employer has latched onto the language of the decision holding that despite the court's conclusion that the employer (BSA) was entitled to enforce a prior arbitrator's decision without requiring a new arbitration, "this conclusion does not foreclose the union from pursuing arbitration or from attempting to

---

[4] The Employer has cited a number of cases reciting the general principles favoring arbitration in support of its position that a new arbitration is appropriate. However, these principles are recognized in and are not inconsistent with Boston Shipping and Derwin. Moreover, while Boston Shipping and Derwin have not been followed elsewhere, none of the cases cited by the Employer are factually analogous to the instant action. Nor has the Employer put forth any persuasive reasons why the holdings of these First Circuit cases should not be followed. See generally Local 1545, United Mine Workers of Am. v. Inland Steel Coal Co., 876 F.2d 1288, 1293-96 (7th Cir. 1989) (reviewing split among the Circuits as to the proper standard to apply for prospective enforcement of an arbitration award and concluding that while a new arbitration was needed in the case before it, the court was "not foreclos[ing] the possibility that a party could allege sufficient facts to avoid the arbitral process in a different situation").

negotiate a different agreement with BSA." Employer Mem. at 6 (quoting <u>Boston Shipping</u>, 659 F.2d at 5 (emphasis added by Employer)). However, it is clear that the quoted language is modified by the court's subsequent (and earlier) statement that the prior award remains "judicially enforceable unless a material change of circumstances arises[.]" <u>Id.</u> The Employer is reading the phrase "does not foreclose the union from pursuing arbitration" as negating the entire holding of the case precluding arbitration in the case of identical situations, an interpretation which this court finds unpersuasive.

In <u>Boston Shipping</u> the parties arbitrated a grievance which resulted in an award defining the geographic boundaries of Berth 13 at the Castle Island terminal facility — a factual determination which, in turn, affected manning requirements under the CBA. 659 F.2d at 2. At issue was whether, in enforcing the award, the District Court had appropriately ruled that the award applied to a new CBA which had gone into effect while the grievance was being prosecuted. <u>Id.</u> The Union, which had lost before the arbitrator, did not regard the award as binding under the new CBA. <u>Id.</u>

The Union claimed that the District Judge's order in effect precluded it from arbitrating the boundaries of Berth 13 ever again.  Id. at 2.  Such an interpretation, according to the First Circuit, would be too broad and would run counter to the well established principles favoring arbitration and, as detailed above, generally allowing a second arbitrator to determine the applicability of prior awards to new situations.  Id. at 3. Therefore, the Court made it clear that it was not issuing a blanket order precluding the Union from arbitrating in the future.  On the other hand, the Court also rejected the Union's contention that it could immediately re-arbitrate the same issue since the contract on which the award was based had expired, finding that such a result would also run counter to the policy favoring arbitration.  Id. at 3-4.  As the plaintiff employer had argued, "to permit the union to ignore the award would make the arbitration a sham and trivialize arbitral dispute resolution — again in contravention of the national labor policy favoring arbitration."  Id. at 4.

The First Circuit concluded that until something material to the arbitration decision changed (i.e., custom, contract language and bargaining history on which the decision was based), the union was bound by the prior decision — the mere commencement of a new contract period alone was insufficient to reopen the issue.  Id. at 4-5.  As the Court ruled:

> We conclude, then, as did the district court, that <u>absent any arguable basis for deferring, in the first instance, to a new arbitration, BSA is entitled to enforce the arbitration award in the new contract term</u>. This conclusion does not foreclose the union from pursuing arbitration or from attempting to negotiate a different agreement with BSA. In the interim, however, the award is controlling on the narrow issue it decided, and no other. We believe this resolution accommodates the parties' need for a meaningful arbitral remedy, as well as avoiding the dangers of judicial intervention in the merits of the contractual dispute or the prior award.

<u>Id.</u> at 5 (emphasis added). The court went on to stress that "the arbitration award binds the parties and is judicially enforceable unless a material change of circumstances arises[.]" <u>Id.</u> In the instant case, there is no "material change of circumstances" nor has the Employer asserted "any arguable basis for deferring, in the first instance, to a new arbitration." Therefore, under <u>Boston Shipping</u>, the Couhig Award should be confirmed and enforced as to the Fila involuntary transfer.

The Employer's attempt to negate the applicability of <u>Derwin</u> to the instant case is equally without merit. In <u>Derwin</u>, the union had sought to confirm an award issued two years earlier, despite the fact that the company had never violated or rejected the award. 719 F.2d at 486. After concluding that the union's action to confirm the award was not barred by a one-year statute of limitations, the Court did conclude that confirmation of the award was nevertheless inappropriate in that the union was not seeking "resolution of a concrete dispute between the parties." <u>Id.</u> at 490. However, an integral part of the

Derwin court's conclusion that putting "its imprimatur upon an arbitral award in a vacuum" was inappropriate, was its assessment of the role of grievance procedures and arbitrations in labor contract disputes.  Id. at 491.  The Court's review of the law, and its confirmation of the Boston Shipping holding that, in very limited situations, a court can act without a prior ruling by an arbitrator, was a critical component of its holding.  Id. at 491.

There is no ambiguity in the Derwin court's conclusion, based on Boston Shipping and other cases, that "where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, [a court will] order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure."  Id. at 491.  In view of the undisputed facts which establish that this is the situation presented here, no further arbitration is appropriate at this time.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Union's Motion for Summary Judgment (Docket # 7) be ALLOWED and that the Employer's Cross-Motion for Summary Judgment (Docket # 10) be DENIED.[5]

          / s / Judith Gail Dein
          Judith Gail Dein
          United States Magistrate Judge

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).